May it please the Court, Counsel. I'm Brian Beggs from the Center for Justice. I represent the Brannons and three other families. By court order, I've been combined with Ms. Brewer's case as well, and the Court asked us to divide our time. I'm going to take seven minutes. She's going to take three. I'm going to reserve two of my minutes. All right. Very good. Thank you. Your Honor, the law is not really in dispute here. Both sides and the trial court agreed that the pioneer equity factors apply. Our contention is that the court below didn't apply them, and if she had applied them on the record, would have reached a different conclusion. We recognize that the standard of review is an erroneous interpretation of law or abuse of discretion, so normally it would be quite high. But we contend, Your Honor, that in this case, the factors contend for an extension of the time under Civil Procedure Rule 60. As you know, under Civil Rule 60, a moving party who has missed a deadline after judgment can come before the Court within a year if they can establish excusable neglect. And the factors that the Court did not mention below in checking on the record is the good faith of the movement. There's been no declaration that the movements were in bad faith or trying to do this strategically. She did not address the lack of prejudice to the nonmovement. There's nothing in the record below that showed that letting these few individuals opt out would affect the case in any way or the settlement decision. There was $150 million, 900,000 plaintiffs, 1,200 opted out. There is no declaration saying that if these seven people opt out, it would destroy the case or be outside the amount of money they thought they would have to pay in opt-outs. But why was this an abuse of discretion on the part of the Court? I understand that the Court didn't explicitly address those issues. Well, the – as you know, under the Pioneer test, you look at the four factors. You address the four factors. And while none is controlling in and of themselves and there's no formula, you are – the Court is required to address them. Our contention is the Court didn't address all the factors that would have mitigated towards allowing it. And the one factor that she did address, and I'll go to that right now, which is it wasn't so much the delay in filing the opt-out notice. She said in her opinion that if the movements had filed earlier, she would have probably found excusable neglect for the whole thing about some of them didn't get the notice, a couple of them were disabled, confused. She seemed to focus on the phase after they knew their delay in being able to find a lawyer to file the opt-out. There was a nine-month delay, and the reason – the only reason given was that they couldn't find a California lawyer, and she didn't find that persuasive. Yeah. That was the only factor that she addressed. And she – the discussion on that, again, the issue wasn't that the plaintiffs did not try to find a lawyer in that time. The issue, they were unable to. And that's a distinction. There seemed to be implicit in her reasoning that the plaintiffs had the money and the opportunity to get someone to take on their case. And that was not in the record. What the record stated, and it's very brief in the record, but there's nothing disputing it, that multiple counsel were approached to file the motion, but they were unable to get them. Now, that's not surprising. If you look in the declarations of the movements, they're in bankruptcy, they have bad credit, they wouldn't be a client of HFC's kind of lending program if they had the money to hire a lawyer. They're in a different State, and getting someone to take on the case was difficult according to the record. And there's nothing disputing that. It was only when they were able to find a lawyer who was admitted to practice in Northern District who was actually in the Bellingham area that they were able to get someone to agree. So it's a different situation than a lawyer simply or clients sitting on a case and not doing anything. It's a question of penalizing them once for falling into predatory lending and then again for not being able to pay for a lawyer. I agree that a lot of the clients you're going to see, sophisticated business folks like HFC, they find out they've made a mistake, they can have something filed right away. In this case, we're on the record, and the only record is that they made efforts to do so, but they didn't have the ability to persuade someone to do it, and it doesn't go into all the details of why or not. But it was within the one-year window contemplated in FRCP 60. And there's no showing of prejudice. I think it would be a different case if HFC would show, oh, there was a prejudice, well, and there was no prejudice in the court. It's going to take as long as it takes to decide one of these motions. There were over 40 filed. My understanding is they've all been resolved, some before, some after, these clients. So there's no extra time in the court. HFC hasn't had to do any extra time to do it. There's been no showing in the record. And, in fact, HFC asked to consolidate these cases and then get extensions on the briefs. That resulted in a six-month delay from the time their first brief was due until their last brief, not because they did anything wrong and they acted in good faith, but there are delays of less than a year that are not prejudicial to other parties. Counsel, you're only going to be crowding your fellow oralist and your reserved time. Sure. I will sit down and let Ms. Haverlow speak about her situation and then reserve two minutes. If you could remind us on the two minutes. All right. I'll be happy to do that. Ms. Haverlow? You have three minutes. Please come to the microphone. Thank you. And would you introduce yourself for the record? I'm Beverly Brewer Haverlow. Okay. I want to thank the court for allowing my case today. I concur with all of Mr. Begg's stated facts. And I need to opt out of the eight-court settlement. And the final fairness rule does apply. I have not acted in bad faith. I've done my best. There has been no prejudice to a non-moving party and no prejudice to the court. The reason for the delay in my case has been to a serious legal mistake. I knew about the deadline. I acted. I gave all information to the attorney. And he did not file and meet the deadline. I've suffered financially. I have suffered tremendously for years on this. And I want to pray for relief. I'm a victim. I've done my best. And I need to opt out and pursue the correct proper legal avenues on my case. I pray for the court's help on this. How much time do I have? Counsel, I think we understand your position. I need to opt out on this, Your Honor. We understand your argument very, very clearly. Thank you. Thank you very much, Ms. Hurley. We'll hear from the other side. May it please the Court. With the Court's permission, I'd like to focus first on Ms. Huberlo's moving remarks. The law has many deadlines. And just as in a claims filing deadline or a statute of limitations, or in this case an opt-out deadline, the attorney represents the client. And if the deadline is missed, the other party is still entitled to the benefit of that deadline. And the recourse is really a matter between the attorney and the client. So you're suggesting that Ms. Huberlo might have a malpractice action against the lawyer? Is that your point? Perhaps, Your Honor. Perhaps. I obviously can't give her legal advice, but it's like a statute of limitations. Well, what's wrong with adding one more opt-out? There are 1,200 out there. I gather there's a very substantial sum which has not yet been fully allocated. Is that correct? Well, Your Honor, the settlement had a financial component. It had an injunctive relief component. It required establishing of certain types of programs that provided economic consideration in the form of foreclosure avoidance, which is a real, real benefit. And the issue here is not whether these appellants are entitled to the benefits of the settlement. They're entitled to all the benefits of those programs. The issue here is whether HFC is entitled to the benefit of the class release. It is entitled to know its liability with certainty. And particularly ---- But what is the status, though, of these other opt-out claimants? Not part of the settlement, the opt-out, those who in fact filed their opt-out notices within the time? Persons who filed opt-out notices within the time, many of them filed lawsuits, which have been defended across the country. Some of them settled. Some of them ---- I know of one that went to verdict for a substantial amount. And so the companies ---- But there is a fund, is there not, that is available for people in that category? Well, it's not a fund. It's those people who opted out. They have lawsuits against the company. And if the company ---- it's not a separate fund. It's like any other lawsuit. If someone slipped and fell on their doorstep and sued them tomorrow, it's ---- Where did I get the impression there was some sort of either limit or allocation with respect to those? Maybe I'm misread it. Well, there ---- some of the particular programs, you know, have budgets. Okay. And some of the injunctive relief provisions are currently ongoing. All right. As Judge Ikuda mentioned, this is a case really about the district court's discretion. And to respond to Judge O'Scanlon's comment, it's really not a question of allowing one in or two in. I think the Court needs to maintain context here that there were a great deal of requests to opt out late that were filed after the deadline, and the district court considered every one of those very carefully, weighed the evidence, weighed the excuse that was given, weighed the time of delay between the notice and when the request to opt out late was filed, and she evaluated all the factors and she made some judgments. And so the question is, you know, is it appropriate for this Court to be upsetting those reasonable judgments? Because the standard under Rule 60, it's not that you have a year after judgment's entered to file a request for relief. Judgment is a jurisdictionally significant act. And to reopen that judgment, which is what a late opt out is, because the class judgment defines who is bound by the judgment and who is not bound by the judgment, to reopen that judgment under Rule 60, that rule specifically says the application needs to be made within a reasonable time. And after a year, it is absolutely barred. And these applications are the claimants that are before the Court in this case. Yes. Are these two combined cases still eligible to participate in the settlement? If they would submit a claim, absolutely. That claim would be considered and paid in the amount set forth in the settlement. Anything further, counsel? Unless the Court has any further questions, I'll yield the ---- I'll take my seat. No question. Thank you. Thank you.  Thank you, Your Honor. Just as to the actual benefits under the class action, the way it's in the record, they put it in the record. But the way it works is that if you have a default or something like that, you can access the fund to help you pay the default. So basically, HFC has put a bunch of money in a fund for people who get into trouble. The money still goes back to HFC. The record in this case, according to my clients, is they get no benefit of the settlement as far as money. They're not getting paid if they submit anything because they're not necessarily in that situation. Well, you just heard opposing counsel say that it's still available. All you're going to need to do is file a ---- What he said was the programs are available. But it's not the type of class action settlement where they simply distribute money to all the people who participated. There's a fund there. If people go into default, they can get assistance with their mortgage payments if they're in default. They get the benefit of the settlement. That was the settlement. They do. In the case of these two, the particular settlement that was reached doesn't benefit them. Is that what you're saying? Yeah. What I'm saying is they get the benefit of eligibility to participate in the programs, but it will not result in a check or money coming to them is what I'm saying. It's not ---- I just wanted to be ---- It's not that type of case. So they, according, in their declarations, and these have not been disputed, they would not benefit financially directly from this class settlement. That's what the record is. Going back to the one year, the counsel is correct. You have up to one year, but only if you can show that any delay in filing is for a good cause. In this case, as soon as the clients found out from HFC that there was a class action and they had missed the deadline when they, when counsel for HFC contacted me, I told them immediately they didn't think they were in the class action. I followed up with a letter promptly. Now, the fourth pioneer factor has to do with what was the reason for delay in filing and was it within the party's control? I would submit to you that the legal error the trial court made was assuming that my clients had control to file in Northern District of California. They did not. I was not admitted and I was not part of that case. They did not have the ability, even though several tries to get someone. That is the part where she missed. If they had control and they had delayed, she's exactly right. Because they didn't, it should be reversed. Thank you. Roberts. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument in Merrick v. The Polar Bear Life Insurance. Thank you.
judges: Hall, O'scannlain, Ikuta